true.   Notwithstanding this fact, appellant claims that because of the allegation of the petition an alternative writ should have issued, so that proof might have been taken.   This is his principal objection to the order.   We think it untenable.   The statement in the petition may be true in the sense that there is no device which will wholly prevent volatile oils from flowing into the sewer, but there is nothing in the petition to contradict the city's affidavits showing that there are numerous devices on the market which are practically efficient in reducing to a minimum the risk of oils in the sewer.

The order should be affirmed, with $10 costs and disbursements.

---

## BORCKMANN v. TERRY CONST. CO.

(Supreme Court, Appellate Division, Second Department.   June 27, 1913.)

MASTER AND SERVANT (§ 182*)—INJURIES TO SERVANT—NEGLIGENCE OF SUPER-
INTENDENT—DETAIL OF WORK.

Defendant furnished a hand winch properly equipped with a clutch, which automatically fell into the teeth of the cogwheel attached to the drum to be used in moving a cylinder on skids, in which work plaintiff was employed under a superintendent, who worked at the point where the cylinder was located some distance from the winch which was operated by means of whistle signals.   The noise of the clutch interfered with the hearing of the signals, and the superintendent removed it from the wheel and instructed plaintiff, who was not informed of such removal to turn the handle of the winch.   As he was doing so about a minute later the handle sprang back, and inflicted the injuries complained of.   *Held*, that the act of the superintendent in moving the clutch was for his own convenience while performing an ordinary detail of the work and was not an act for which the master was responsible under Laws N. J. 1909, c. 83, imposing a liability on employers for injuries sustained by servants through the negligence of superintendents in performing acts of superintendence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

Carr and Rich, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Gustav Borckmann against the Terry Construction Com pany.   From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals.   Reversed, and complaint dismissed.

Argued before JENKS, BURR, CARR, RICH, and STAPLE-
TON, JJ.

E. Clyde Sherwood, of New York City, for appellant.
William Seward Shanahan, of Brooklyn, for respondent.

STAPLETON, J.   The plaintiff recovered a judgment against the defendant for damages for personal injuries.   The relation of master and servant existed between the parties.

There is no basis for plaintiff's recovery unless he established liability under a statute of the state of New Jersey, known as chapter 83

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the Laws of 1909, and which is entitled "An act to extend and regulate the liability of employers for injury or death to employés in certain cases." The act is similar in its essential provisions to chapter 600 of the Laws of 1902 of the state of New York, entitled "An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employés."

The casualty occurred on the 21st day of September, 1909, at Raritan, in the state of New Jersey. The plaintiff is a resident of the state of New York, and the defendant is a domestic corporation. Work began at half past 7. One Duke, the owner of a farm, had bought a machine pump. The defendant's work was to install it. The installation was being made by a gang of five men, including plaintiff, and one Swenson was the foreman of the gang. The plaintiff was an experienced "rigger," and was working as such for the defendant for about a year and one-half before the injury, and worked upon and was familiar with the implement by which he was injured. The specific act which the gang were performing was the hauling of a metal cylinder nine or ten feet long, three feet high, and two or three feet wide, weighing about four tons. The method pursued was that planks were placed upon the ground, which was about level, and upon the planks were placed wooden rollers upon which were placed skids, and upon the skids the cylinder was placed. The hauling power was derived from a winch or windlass of ordinary and familiar type, operated by hand. The winch was securely placed. A rope was fastened to the cylinder, and was run from it to the drum or barrel of the winch. Several turns of the rope would be taken around the drum and the other end of the rope would be held by one of the workmen, who could hold it taut or slacken it as occasion required. One or two workmen would turn the handle of the winch to apply the power, while one or two others would attend to shifting the rollers under the cylinder which was being moved. The winch consisted of two triangular uprights through which there passed an iron rod, upon which there was a smaller cogwheel, and upon which also, at either end, were the handles of the said machine. This small cogwheel fitted into a larger cogwheel, and connected to the larger cogwheel was the barrel of the winch around which passed the rope connecting the winch with the skids. The handles of the winch could be taken off at any time. On the large cogwheel there was what was variously called a pawl or dog or clutch, which was a piece of iron about six inches long and three inches wide, bolted into the winch When the clutch or pawl was in position, it automatically fell into each of the teeth of the large cogwheel. These teeth were about three-fourths of an inch wide at the top and a quarter of an inch at the inside portion. When the clutch was in position or on the large cogwheel, it could not spring back more than three-quarters of an inch.

At the commencement of work on the day in question, the plaintiff and one Stevenson were doing certain work at the skid, which was about 100 or 150 feet away from the winch. The other men, including Swenson, were at the winch. One of the men at the winch turned the handle by which the cogwheels were turned, and the power applied for

the moving of the cylinder upon the skids. Another of the men at the winch held the rope which passed over the barrel of the winch, and the third man stood by, resting.

The doing of the work was in charge of Swenson, who was called as a witness by the defendant, and who testified that he was told by Mr. Terry, the general superintendent of the defendant-respondent, "to go out there and whatever I, out of my own judgment thought was to be done, to do it." Swenson selected the men who were to go with him, and selected the machinery that was to be used upon this work. He also hired any man that it was necessary to hire in Jersey, "without consultation with anybody" in the Terry Construction Company. He paid the men. He also testified:

"I told all these men where they were to work, and when they were to work, and what particular work they were to do upon this job. There was no one else that represented the Terry Construction Company in higher position than I on that job except Mr. Terry was out there every now and then."

When Mr. Terry went to the job he spoke simply to Swenson and the erecting engineer of the Allis-Chalmers Company, for which company the defendant-appellant was placing the pump in position.

On the day of the accident Swenson turned the handle of the winch twice—the first time at the beginning of the work on the day in question, and again later—before the accident happened, which was about 8:30 or 9 a. m. Swenson had not turned the handle of the winch until the day of the accident or a day or two before. During the morning, and before the accident, Swenson had directed Gorman, one of the gang, to take the pawl off, or throw it back; in other words, to take it out of engagement with the cogwheel. He testifies he did this because the pawl, falling upon the cogwheel, made so much noise that the signals of Stevenson at the skid, which were given by means of a whistle, could not be distinctly heard by him while working at the winch. At about 8:30 or 9 o'clock, while Christiansen was turning the handle of the winch and Gorman was holding the rope at the winch, Swenson went to Borckmann, who was working with Stevenson at the skid, and directed Borckmann to go over and work in turning the handle of the winch. He knew that the pawl was off and that it had not been placed in position, but he did not tell Borckmann of this fact. The pawl had not been placed in position between the time when Swenson instructed that it be placed off or put out of position until after the time of the accident. Swenson left the location of the skids and the machine, and went inside the building, into which the machinery being hauled was to be taken, in order to determine whether certain flooring in the building, being laid at the time, was sufficient to sustain the weight to be imposed upon it. Borckmann at once went to the winch and immediately after getting there began to turn the handle, and about one minute later the handle sprang back and struck him in the right eye, inflicting such injuries that it was necessary to remove the eye. Plaintiff testified that he did not know how the accident happened; that all he knew was the winch handle struck him in the head.

The legal proposition upon which the plaintiff rests his recovery is that "Swenson, in directing the pawl of the winch to be taken out of contact with the cogwheels, and also in directing Borckmann to go to work upon the winch, was performing acts of superintendence within the meaning of the statute." Conceding that the evidence was sufficient to authorize the finding of the jury that Swenson, at the time of the injury, was by the employer, the defendant, intrusted with superintendence, that he exercised superintendence, and that his principal duty was that of superintendence, an element essential to recovery remained to be proved; that is, the negligence which relates to an act of superintendence. Guilmartin v. Solvay Process Co., 189 N. Y. 490, 494, 82 N. E. 725; Kujava v. Irving, 122 App. Div. 375, 106 N. Y. Supp. 837. The proof fails to establish that element. The direction of Swenson that the pawl of the winch be taken out of contact with the cogwheels for his own convenience while he was performing an ordinary detail of the work was not an act for which the master was responsible under the statute. The direction of Swenson to the plaintiff that he perform his work at an implement free from defect and adequate for the purpose was not a negligent act. The master was under no obligation, under the statute, to see that the plaintiff used a proper machine in a skillful manner.

The evidence was insufficient to take the case to the jury. The record contains the respondent's exceptions, and no evidence offered by him upon the issue of the negligence alleged was excluded.

It follows, therefore, that the judgment and order should be reversed, with costs, and judgment ordered for the defendant dismissing plaintiff's complaint.

JENKS, P. J., and BURR, J., concur. CARR, J., reads for affirmance, with whom RICH, J., concurs.

CARR, J. I dissent upon the ground that the alleged negligence of the superintendent was not in a detail of the general work, but in a detail of the particular work of superintendence. The "pawl" or "dog" was taken off by the order of the superintendent, not for his personal convenience, but to increase the facility of the general work, and thus this order was in exercise of superintendence. The effect of the order was thus to render the winch temporarily unsafe and thus temporarily defective within the meaning of the statute. The plaintiff did not know of this, and the superintendent did not tell him of it when the plaintiff was ordered to work at the winch.

I think the judgment and order should be affirmed, with costs.